UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

MARY A. BELL,

        Plaintiff,

v.                                        Case No. 07-CV-81

COLUMBIA ST. MARY'S, INC. and
COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.

        Defendants.
_____

# ORDER

On January 24, 2007, plaintiff Mary A. Bell ("Bell") filed a complaint against her former employer, Columbia St. Mary's, Inc. ("CSM"), alleging CSM violated the Americans with Disabilities Act by failing to accommodate her disability, and by terminating her employment because of her disability. Bell later amended her complaint to add Columbia St. Mary's Hospital Milwaukee, Inc. as a defendant.[1] Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

Beginning on June 16, 2003, CSM employed Bell as a medical records specialist at St. Mary's Hospital in Milwaukee, Wisconsin. (Defendants' Proposed Findings of Fact ("DPFF") ¶¶ 3-4, Docket #83). In that position, Bell worked in one of the hospital's medical records filing rooms. (DPFF ¶ 7). Bell generally controlled

---

[1] Because defendant Columbia St. Mary's Hospital Milwaukee, Inc. is a wholly owned subsidiary of CSM, the court will refer to the defendants collectively as CSM.

her own time at work, and the parties agree that she performed her work in a prompt and proficient manner. (DPFF ¶¶ 13-14). In September of 2004, Bell testified that she began experienced symptoms of urinary incontinence, including using the bathroom more often than usual and wetting the bed on two occasions. (Plaintiff's Proposed Findings of Fact ("PPFF") ¶¶ 5, 7, Docket #95; DPFF ¶ 43). Despite her symptoms, Bell testified that she did not need to use incontinence protection. (DPFF ¶¶ 34-35). She notified her supervisor, Hanh Ly ("Ly"), of the problem and also set up an appointment to see a physician. (PPFF ¶¶ 7-8, 12). At work, Bell had unrestricted access to a public restroom located approximately 170 feet down the hall from the medical records filing room. (DPFF ¶¶ 12, 15).

Bell's employment with CSM came to an abrupt end on November 11, 2004. On that day, Bell was working with Ly in collecting filing performance data for CSM's Medical Records Department. (DPFF ¶¶ 6, 17). As part of the data collection, Ly was to record the amount of time it took for Bell to complete certain "filing segments" in the medical records filing room. (DPFF ¶ 18). Before timing began, Bell told Ly that she might need to use the restroom. (DPFF ¶ 22). Bell also told Ly that her bladder felt full, but that she did not want to use the restroom at that moment. (DPFF ¶¶ 21, 24). Instead, Bell and Ly began the timed filing. After approximately fifteen to twenty minutes of filing, Ly momentarily left Bell alone. (DPFF ¶ 26). While Ly was away, Bell dropped her pants, squatted and relieved herself on the floor between two aisles of the filing room. (DPFF ¶¶ 27, 31). Ly witnessed Bell's actions

through the window of the filing room door and, upon reentering the room, found a puddle of urine on the floor beneath Bell. (DPFF ¶¶ 27, 31).

Ly immediately reported the incident to her supervisor, and Bell was suspended the next day. (DPFF ¶¶ 30-33, 36). At a meeting between Bell, Ly and CSM's director of human resources held on December 3, 2004, Bell admitted that she had urinated on the floor of the filing room, and presented CSM with a letter from a physician stating that Bell suffered from urinary incontinence. (DPFF ¶¶ 39-40; PPFF ¶ 57). During the meeting, Bell was notified that her employment with CSM was terminated. (DPFF ¶ 40).

On April 8, 2005, Bell filed a claim with the United States Equal Employment Opportunity Commission ("EEOC"), alleging CSM terminated her employment based on her race, and that she was denied certain employment positions because of her age. (DPFF ¶ 60). Bell later amended her claim to include a charge of disability discrimination based on her urinary incontinence. (DPFF ¶ 65). On June 7, 2006, the EEOC informed Bell that it was unable to find that any racial or age-based discrimination had occurred, but that the EEOC did find reasonable cause to believe that CSM had illegally discriminated based on Bell's alleged disability. (DPFF ¶ 69). After failed efforts to conciliate the matter with CSM, the EEOC issued Bell a so-called "right to sue letter" on October 26, 2006.

After her termination from CSM, Bell also applied for Social Security Disability Insurance, claiming that she was unable to work due to a disabling condition that began on November 11, 2004. (DPFF ¶ 51). After initially denying her application,

-3-

Case 2:07-cv-00081-JPS   Filed 01/23/09   Page 3 of 13   Document 105

the Social Security Administration granted a hearing and eventually granted Bell benefits. (DPFF ¶¶ 52-56). Apparently, in addition to her urinary incontinence, Bell has also suffered emotional problems since her termination from CSM. (PPFF ¶ 60).

**ANALYSIS**

Summary judgment is warranted where the moving party establishes that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment must set forth specific facts showing the existence of a genuine issue for trial, and may not rely on allegations or denials of the adverse party's pleading. Fed.R.Civ.P. 56(e). In conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. See *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

As an initial matter, CSM argues that Bell's claims are time-barred. CSM alleges that Bell did not include a disability-related claim in her original EEOC charge, but instead, Bell was allowed to amend the charges more than nine months

after her original EEOC filing. CSM argues that Bell's disability claim should not relate back to the original EEOC charge. Bell responds that the facts set forth in her original filing were sufficient to put CSM on notice of a disability claim. Bell notes that her EEOC filing originally alleged that Bell was fired after wetting herself due to a medical condition, and that her amended charge did not add any facts. Bell argues that the EEOC directed her to amend the charges after investigating her claim.

Before filing a claim in federal court under the Americans with Disabilities Act ("ADA"), a plaintiff must exhaust his or her administrative remedies. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). To exhaust administrative remedies, a plaintiff must show the following: (1) the filing of charges with the Equal Employment Opportunity Commission (EEOC) within 180 days of the discriminatory employment action, or within 300 days of the employment action if an equivalent state agency exists; and (2) a notification from the EEOC that it does not intend to sue–commonly referred to as a "right-to-sue" letter. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006) (citing 42 U.S.C. §§ 2000e-5(c), (e) and (f)(1)). A plaintiff may amend an EEOC charge "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Fairchild*, 147 F.3d at 574 (citing 29 C.F.R. § 1601.12(b)). Any additional charges "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *Id.*

The original charge of discrimination form that Bell filed with the EEOC included the following facts:

> On November 11, 2004, Hahn Ly came to the basement, to time me while I filed documents. I had previously been sick, and was awaiting an opportunity to see my physician. Because of my medical problem, I had an accident and wet my pants. Hahn Ly told several other non-management employees about my accident. Additionally, I was discharged on December 3, 2004, despite my telling her that I was undergoing testing to determine the nature of my medical problem.

(Pedigo Hall Decl., Ex. D, Docket #84). The court finds that a possible claim of disability discrimination under the ADA could be reasonably inferred from these facts. *See Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). Therefore, because the court considers Bell's disability claim to have grown out of the subject matter of her original EEOC charge, Bell's disability charge relates back to her original EEOC filing. Because Bell's EEOC charge under the ADA was timely and because she received a right-to-sue letter, the court finds that Bell was entitled to bring this case.

The court now turns to the merits of Bell's ADA claim. The ADA sets for the following general rule with respect to employment discrimination:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). In assessing a claim under the ADA, the court looks first to the threshold question of whether the plaintiff has established that he or she suffered a qualifying disability when the alleged discriminatory action occurred. *See Burnett*

*v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006) (assessing plaintiff's disability before considering failure to accommodate and discriminatory termination claims). The ADA defines a disability as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Supreme Court has held that this definition is a demanding one. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197-98 (2002). As a result, "not every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). The court must consider disabilities on a case-by-case basis, taking into account the severity of the impairment, its duration or expected duration and its long-term impact on the person. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 198; *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 29 C.F.R. §1630.2(j)(2)(I)). A medical diagnosis of an impairment alone is insufficient to demonstrate a disability. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 198.

Bell has not alleged that CSM regarded her as having a disability as defined by the ADA. Rather, Bell alleges that her urinary incontinence constitutes an impairment and the ability to dispose of bodily waste is the major life activity that is substantially limited by that impairment. In considering whether Bell's claimed disability fits into either of the first two categories of the ADA definition, the court must determine whether Bell has established that her alleged impairment

substantially limited one or more major life activities. *See Kampmier*, 472 F.3d at 938 (holding that a plaintiff must show an impairment substantially limits a major life activity in order to show plaintiff had a record of a disability).

Under the ADA, an impairment that is substantially limiting is one that renders a person "unable to perform a major life activity that the average person can, or . . . significantly restricted as to the condition, manner or duration under which he can perform a major life activity as compared to the average person." *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 311 (7th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(1)). Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); *see Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 195. Bell does not allege that she is unable to dispose of her bodily waste altogether, but rather that her urinary incontinence significantly restricts her major life activity of eliminating her own bodily waste.

In its motion, CSM argues that Bell has failed to establish that she suffered from a disability, or that she had a record of being disabled prior to her termination. CSM claims that Bell's urinary incontinence issues did not substantially limit any of Bell's life activities because her symptoms were infrequent, undiagnosed, and because she had ready access to a bathroom while employed as CSM. CSM also argues that eliminating one's own bodily waste is not a major life activity. CSM argues that outside the incident which led to Bell's termination, and two other bed-wetting incidents, Bell's urinary problems had little or no impact on her life.

In response, Bell cites two of her treating physicians who have concluded that she suffers from urinary incontinence and interstitial cystitis which cause Bell to involuntarily lose control of her bladder, and which substantially limit her abilities. Bell also asserts that her incontinence is chronic and that CSM was aware of her urinary incontinence issues at that time of her termination. Notably, Bell has not argued that her incontinence impaired any major life activity other than the elimination of bodily waste.

The court finds no material issues of fact remain in dispute, and that Bell has failed to establish that she was disabled, as defined by the ADA, at the time of her termination from CSM. The court does not doubt that Bell's urinary incontinence is impairing to some extent, or that the elimination of bodily waste is a major life activity. *See e.g. Heiko v. Colombo Savings Bank,* F.S.B., 434 F.3d 249, 255 (4th Cir. 2006); *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 384 (3rd Cir. 2004); *c.f. Gratzl v. Chief Judges of the 12th, 18th, 19th and 22nd Judicial Dist.*, No. 07-C-867, 2008 WL 2840566 at *8 (N.D.Ill 2008). However, Bell has not demonstrated that her urinary incontinence substantially, or *to a large degree,* limited that life activity. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 196. (defining an impairment that "substantially limits" as one that limits a life activity "to a large degree").

Bell testified that she began experiencing urinary incontinence symptoms two months before the incident which led to her dismissal. These symptoms included wetting the bed on two occasions, and using the restroom with greater frequency than normal. The worst single incident that Bell cites in which her urinary

incontinence limited her ability to eliminate her own bodily waste was relieving herself on the floor of the medical records filing room. Yet, Bell told her supervisor that she felt her bladder was full at least fifteen minutes before that incident, but for some reason decided not to use the restroom located down the hall. In short, Bell has presented no evidence that her incontinence restricted her from eliminating waste at work in the same manner as the average person in the general population; that is to use a restroom. One of Bell's own treating physicians testified that Bell's incontinence would not prevent her from working, and that she could wear incontinence protection if necessary. (PPFF ¶ 92). Bell testified that she did not need incontinence protection while she was working for CSM.

When viewing the facts in a light most favorable to Bell, the court is unable to conclude that any reasonable juror could find Bell was *significantly* restricted by her urinary incontinence symptoms in her ability to eliminate her own urine. While Bell's urinary incontinence may be permanent, the facts Bell presents simply do not establish that her impairment reached the level of severity, duration and frequency at the time of her dismissal that is required to trigger the ADA. Because Bell has not established that her impairment substantially limited a major life activity, she cannot establish that she was disabled as defined by the ADA. Having concluded that Bell has failed to make a showing sufficient to establish the existence of an element essential of her claim, namely, that she was disabled, the court is obliged to grant CSM's motion for summary judgment.

CSM also moves to strike statements in Bell's proposed findings of fact. (Docket #97). CSM claims that several of Bell's proposed findings are based on testimony of persons who lacked personal knowledge of the matters about which they testified. CSM also claims that several of the proposed findings are based on hearsay testimony. Based on the disposition of this case, and the fact the court did not rely on the portions of Bell's proposed findings CSM seeks to have stricken, the court denies CSM's motion to strike as moot.

CSM also has two motions for sanctions pending before the court. (Docket ##'s 32, 38). The first motion, made pursuant to Fed.R.Civ.P. 37, seeks a variety of sanctions for Bell's alleged failure to produce certain expert reports. Because CSM failed to comply with Civil L.R. 37.1, the court denies the motion. The second motion, made pursuant to Fed.R.Civ.P. 11, seeks sanctions against Bell and her counsel for bringing a frivolous claim. Based on CSM's motion, the court is not convinced that Bell's actions in this case, or those of her counsel, raise concern under Rule 11. Therefore, the court denies CSM's motion and declines to impose sanctions.

Finally, Bell seeks to have an expert report from one of her treating physicians sealed. The motion was made in connection with Bell's opposition to CSM's Rule 11 motion for sanctions. Bell claims that the report contains highly personal information involving her psychological treatment and history, and that revealing this information to the public would cause her embarrassment and humiliation. In her motion, Bell also claims that "[p]roducing relevant documents to an opponent in

litigation is required, and one should not lose a right to privacy because she has complied with the rules of the Court and civil procedure." (Docket #52). CSM argues that Bell disclosed the report to CSM more than six months before filing the motion to seal and, therefore, the information contained in the report is no longer confidential.

In general, pretrial discovery is to take place in the public eye unless compelling reasons exist for denying the public's access. *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (citing *Am. Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979)); *see also Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348-49 (7th Cir. 2006). However, the court may, under Fed.R.Civ.P. 26(c)(1), and Civil L.R. 26.4, issue an order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Here, the report in question is a psychological evaluation of Bell conducted by a physician. Because the court considers Bell's psychological conditions to be of little relevance to this case, and because of the potentially embarrassing nature of the information contained in the report, the court grants Bell's motion. *See generally Oberweis Dairy*, 456 F.3d at 718 (discussing sealing of psychiatric records).

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #81) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendants' motion to strike (Docket #97) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that defendants' motions for sanctions (Docket ##'s 32 and 38) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to file document under seal (Docket #52) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiff's complaint be and the same is hereby **DISMISSED** with prejudice;

The clerk of the court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge